### WEBB v. DETROIT BOARD OF HEALTH.

1. BOARDS OF HEALTH—QUARANTINE—COMPENSATION.

A municipal board of health will not be required to allow compensation for losses occasioned by the quarantining and disinfecting of premises infected with smallpox, where the only use made of the premises was such as was necessary for the proper care of the patients who were there found suffering from the disease.[1]

2. SAME—NEGLIGENT DISCHARGE OF DUTY—LIABILITY.

If the officers of a municipal board of health are negligent in the matter of disinfecting property, and thereby cause unnecessary damage, such officers, as individuals, and not the municipality, are liable, if any liability attaches.

*Certiorari* to Wayne; Hosmer, J. Submitted February 1, 1898. Decided March 29, 1898.

*Mandamus* by Lucy A. Webb to compel the board of health of the city of Detroit to audit a claim for damages. From an order denying the writ, relator brings *certiorari*. Affirmed.

*John J. Speed*, for relator.

*Arthur Webster* ( *C. D. Joslyn*, of counsel), for respondent.

LONG, J. On July 23, 1897, relator filed a petition in the Wayne circuit court, praying for a writ of *mandamus* against the respondent to compel it to allow her bill for losses occasioned by smallpox infection. The bill was for amount due her ''for loss and for compensa-

[1] A note on quarantine regulations by health authorities is found with the case of *Hurst* v. *Warner*, (Mich.) as reported in 26 L. R. A. 484.

tion by reason of the infection of the premises No. 33 Baltimore avenue west, in the summer of 1894, by smallpox:

| | |
|---|---:|
| Cost of renovation, etc., after disinfection | $107 |
| Loss of rent | 80 |
| Furniture, bedding, and other articles destroyed | 40 |
| | $227 " |

An issue having been made upon the petition and answer, the same came on for hearing before the court and a jury. At the conclusion of the testimony, the court denied the writ, without taking the verdict of the jury upon the questions of fact. The court said:

"It is obvious that where the city takes property as a smallpox hospital, or where the property of another has become infected by the act of the city or any of its agents, the city would be liable to respond for the value of such property. The case at bar, however, presents no such question. Mrs. Brown, the tenant of relator, had a case of smallpox in her house, and subsequently a second case broke out. Whatever infection came to the premises or the property therein came in consequence of these cases of smallpox, and without any fault on the part of the board of health, and not as the result in any way of their action. The property had become infected even before any action was taken on their part. It does not appear from the evidence that any measures they took to disinfect the premises injured the property which relator afterwards destroyed, and for which relator seeks compensation. A suggestion has been made that she is entitled to receive compensation on account of the moving back, after the removal, of the first patient. But it will be remembered that Mrs. Webb was not in possession of the property, but that she had leased the premises to Mrs. Brown; and, if any right exists against the board of health, it does not belong to relator. For this reason a *mandamus* must be denied."

The case comes into this court by writ of *certiorari*. The testimony is all returned in this record.

We are satisfied that the court below was correct. The smallpox broke out through no fault of the health board. As soon as the first case in this house was reported, the

patient was removed by the health board to the hospital, and the house quarantined. It was quarantined nearly two weeks, when the second case broke out. This patient was not removed to the hospital, but the house was continued to be quarantined by the board. During all this time it was rented to Mrs. Brown, who continued to live there, and who, the relator testified, paid the rent until the middle of June, and then, because of the small-pox, was not able to pay more rent. But we think no claim can be made for the rent of the house under the circumstances here shown, as the question is ruled by *Farnsworth* v. *Supervisors of Kalkaska Co.*, 56 Mich. 640. The house was infected before it was quarantined. The proofs show that the goods, after being disinfected, were destroyed by the relator or under her directions, and not by the respondent. She destroyed them, not because they were injured by disinfection, but because they had been infected with the disease. *Safford* v. *Detroit Board of Health*, 110 Mich. 81 (33 L. R. A. 300), has no bearing upon this case. The board did not make a hospital of relator's house, or make any further use of her goods than was necessary to the proper care of the patients who were there found suffering from the disease. It was the duty of the respondent to quarantine the relator's house, and, for the protection of the public, to disinfect the property. The municipality is not liable for injury to property resulting from the performance of this duty by its officers. If the officers have done their work negligently, and thereby caused unnecessary damage, such officers, not the municipality, are liable, if any one is. *Shipman* v. *State Live-Stock Sanitary Commission*, 115 Mich. 488.

The order of the court below is affirmed.

The other Justices concurred.