MURRAY v. VILLAGE OF GRASS LAKE.

MUNICIPAL CORPORATIONS — BOARDS OF HEALTH — VILLAGE COUNCIL — FLOODING LANDS — LIABILITY.

Under the act for the incorporation of villages (1 Comp. Laws 1897, § 2684 et seq.), which, by section 2821, invests the village council with "all the authority conferred on boards of health by the general laws of the State, so far as applicable," and, by section 2822, authorizes the council to appoint a board of health, a village cannot be held liable for the action of its council, taken on the advice of such board, in so raising the level of a lake that private lands are flooded and damaged, the function exercised being one which pertains to the council as representative of the State.

Error to Jackson; Peck, J. Submitted June 12, 1900. Decided October 31, 1900.

Case by Henry H. Murray against the village of Grass Lake for flooding plaintiff's land. From a judgment for defendant on demurrer to the declaration, plaintiff brings error. Affirmed.

*John W. Miner* (*Grove H. Wolcott*, of counsel), for appellant.

*Thomas E. Barkworth*, for appellee.

MONTGOMERY, C. J. This case was determined below on demurrer to the plaintiff's declaration. Final judgment was entered for the defendant, and plaintiff brings error.

Briefly stated, the averments of the declaration are that the plaintiff owns certain land adjoining Tims Lake, the outlet of which is connected with Grass Lake; that Grass Lake adjoins the village of that name, and its outlet is within the corporate limits; that for more than 20 years the waters of Grass Lake have been maintained at a certain level; that on the 3d of May, 1897, the board of health of defendant village recommended that the water of Grass Lake be raised to its former level, and the common council, by resolution, and without any necessity therefor, ordered that the lake be raised to its former height by raising the outlet, which had theretofore been lowered; that, in pursuance of such resolution, defendant caused the outlet to be obstructed so that the water of the lake was raised two feet higher than the level which had been maintained for 20 years; that the land of plaintiff, which had during this 20 years been suitable for pasture and meadow, became flooded, and of no value or use to plaintiff.

The demurrer rests upon two substantial grounds: *First*, it is alleged that the declaration shows upon its face that the act complained of was *ultra vires;* and, *second*, that, if any power existed in the village to perform the act complained of, it was an act done in the exercise of a governmental function, and the duty attempted to be performed was not a corporate duty, but was exercised as a governmental agency, and that for any improper exercise of such a function no right of action accrues to an individual against the corporation. The record does not show upon which ground the demurrer was sustained.

In 2 Dill. Mun. Corp. (4th Ed.) § 966, the rule is stated as follows:

"As respects municipal corporations proper, whether

specially chartered or voluntarily organizing under general acts, * * * it is, we think, universally considered, even in the absence of a statute giving the action, that they are liable for acts of misfeasance positively injurious to individuals, done by their authorized agents or officers in the course of the performance of corporate powers constitutionally conferred, or `in the execution of corporate duties."

This rule has been recognized in this State. *Sheldon* v. *Village of Kalamazoo,* 24 Mich. 383; *Ashley* v. *City of Port Huron,* 35 Mich. 296 (24 Am. Rep. 552); *Seaman* v. *City of Marshall,* 116 Mich. 327 (74 N. W. 484); *Morley* v. *Village of Buchanan,* 124 Mich. 128 (82 N. W. 802).

As corollary to the rule above stated is the rule laid down by the same learned author (section 968):

"If the act complained of necessarily lies wholly outside of the general or special powers of the corporation as conferred in its charter or by statute, the corporation can in no event be liable to an action for damages, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command; for a corporation cannot, of course, be impliedly liable to a greater extent than it could make itself by express corporate vote or action."

The difficulty arises in drawing an exact line between acts which are not *ultra vires* in this sense and those which are. As we understand the plaintiff's contention, it is substantially that, where a corporation is given general power to act with a certain purpose, or· to effect certain objects, it may become liable for acts of misfeasance directed by the governing body, even though the act in question is committed while employing means which the corporation is not, under any circumstances, authorized to employ. If this contention has support in our own cases, it is found in *Sheldon* v. *Village of Kalamazoo, supra.* The contention of defendant, on the other hand, is that, when the act of misfeasance is one which the municipality has no authority to do under any circumstances, it is so

far *ultra vires* as that the governing body of the corpora-
tion cannot make the corporation liable as for a tort by an
unauthorized invasion of property rights, particularly when
no benefit accrues to the corporation by the unauthorized
act.   Defendant's contention certainly has the support of
eminent authority.   *Anthony* v. *Inhabitants of Town
of Adams,* 1 Metc. (Mass.) 284; *Cavanagh* v. *City of
Boston,* 139 Mass. 426 ( 1 N. E. 834, 52 Am. Rep. 716 );
*Mayor, etc., of Albany* v. *Cunliff,* 2 N. Y. 165.   The
difficulty in formulating a general rule on this subject
has been recognized by two eminent writers.   2 Dill.
Mun. Corp. (4th Ed.) § 969; Tied. Mun. Corp. § 324.

We do not find it necessary to lay down any precise rule
in this case, as we prefer to rest our conclusion on other
grounds.   The act under which defendant village was
incorporated provided by section 2821 (1 Comp. Laws
1897) that "the council shall have and exercise all the
powers and authority conferred upon boards of health by
the general laws of the State, so far as the same are
applicable, and they may enact such ordinances as may
be necessary for regulating the proceedings and mode of
exercising such powers."   The next section authorizes the
council to appoint a board of health.   It would appear
that that was done in this case.   It also appears that the
action taken by the council was taken on the recommenda-
tion of the board of health.   The action of the council was
doubtless taken under authority of the section quoted.
The fact that the wrong was committed by the officers of
the village does not fix the responsibility upon the muni-
cipality if the wrongful act was done under authority of a
general statute in the attempt to perform a public service
not distinctively local or corporate.   2 Dill. Mun. Corp.
(4th Ed.) § 974.   It is apparently the established rule that
local health officers, acting under a general statute of the
State conferring their powers, are not performing corporate
functions, but are representatives of the State, and that
the municipality is not liable for the acts of such boards,
either of misfeasance or nonfeasance.   Tied. Mun. Corp.

§ 332; 2 Dill. Mun. Corp. (4th Ed.) § 977; 4 Am. & Eng. Enc. Law (2d Ed.), p. 607; *Bryant* v. *City of St. Paul*, 33 Minn. 289 (23 N. W. 220, 53 Am. Rep. 31); *Rudolphe* v. *City of New Orleans*, 11 La. Ann. 242; *Mitchell* v. *City of Rockland*, 41 Me. 363 (66 Am. Dec. 252); *Gilboy* v. *City of Detroit*, 115 Mich. 121 (73 N. W. 128); *Webb* v. *Detroit Board of Health*, 116 Mich. 516 (74 N. W. 734, 72 Am. St. Rep. 541).

This view is decisive of the case, and the judgment will be affirmed.

The other Justices concurred.